UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD J. YANDRISOVITZ and<br>CHARLOTTE F. YANDRISOVITZ,<br><br>Plaintiffs,<br><br>v.<br><br>OHIO STATE LIFE INSURANCE COMPANY<br>and AMERICO FINANCIAL LIFE AND<br>ANNUITY INSURANCE COMPANY,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:     No. 5:18-cv-1036<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**O P I N I O N**
Defendants' Motion to Dismiss, ECF No. 3 — Granted in part

**Joseph F. Leeson, Jr.**                                                          **August 31, 2018**
**United States District Judge**

## I. INTRODUCTION

In this insurance dispute, the plaintiffs, a married couple, contend that the insurance company that issued their life insurance policies continued to deduct increasing premiums from their bank account after the policies expired. Defendants move to dismiss Plaintiffs' claims and argue that they acted in accordance with the policy documents. For the reasons discussed below, Defendants' motion is granted with respect to all claims except Plaintiffs' Pennsylvania state law conversion claim.

## II. BACKGROUND

The following facts are taken from Plaintiffs' Complaint, ECF No. 1.

Plaintiffs Edward J. Yandrisovitz and Charlotte F. Yandrisovitz, husband and wife, each bought a $25,000 convertible term life insurance policy from Defendant Ohio State Life

Insurance Company. Compl. ¶ 4. The policies were issued on September 7, 2001, and October 17, 2001, with guaranteed premiums of $25.66 and $96.30 respectively. Compl. ¶ 4. Both policies had a fifteen-year term: they expired on August 31, 2016, and September 30, 2016. Compl. ¶ 5.

When the policies expired in 2016, Ohio State Life Insurance, then known as Defendant Americo Financial Life and Annuity Insurance Company, renewed them for a year without notifying the Plaintiffs or obtaining their consent. Compl. ¶ 6. Plaintiffs allege that their insurance policies did not allow Defendants to renew the policies and continue deducting premiums from Plaintiffs' bank account. Compl. ¶ 14. Regardless, Defendants increased the policy premiums from $25.66 to $268.79 and from $96.30 to $676.34 and continued deducting these amounts from Plaintiffs' bank account. *Id.* A year later, in September 2017, the Defendants once again renewed the policies after the initial one-year renewal expired. Compl. ¶ 9. Again, Defendants did not notify Plaintiffs of the extension or obtain their consent to it. Compl. ¶¶ 10-11.

On December 20, 2017, Plaintiffs contacted Defendants and requested that they stop deducting funds from Plaintiffs' bank account. Compl. ¶ 17. Regardless, Defendants deducted premiums on January 9, 2018, and in February 2018. Compl. ¶ 18. Defendants deducted a total of $11,753.54 in premiums from Defendants' bank account after the policies expired in 2016 and have refused to reimburse Plaintiffs this amount. Compl. ¶¶ 19-20. As a result of Defendants' deducting the funds from Plaintiffs' account, Plaintiffs incurred overdraft fees of $2,100 and interest at 21.15%. Compl. ¶ 22.

Plaintiffs brought suit in the Court of Common Pleas of Lehigh County, Pennsylvania, on February 16, 2018. Notice of Removal ¶ 1, ECF No. 1. Their Complaint alleges claims of

conversion, fraudulent misrepresentation, misappropriation of funds, statutory bad faith, and violations of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. §§ 201-1-201-9.3. Defendants removed the case to this Court on March 12, 2018, ECF No. 1, and have moved to dismiss Plaintiffs' claims under Rule 12(b)(6).

## III. LEGAL STANDARD

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV. ANALYSIS

### A. This Court will not consider the policy documents Defendants attach to their motion to dismiss.

Defendants attach documents to their motion to dismiss that they present as Mr. and Mrs. Yandrisovitz's respective life insurance policies. Exs. 1 and 2 to Defs.' Mot., ECF Nos. 3-3 and 3-4. They argue that the policies provided for terms of twenty-six and thirty years, respectively, and expressly allowed Defendants to increase the annual premium for each year after the tenth year of the policy—in other words, that the language of the policies undermines Plaintiffs' position that their policies terminated after fifteen years in 2016, and that Defendants had no right to continue deducting premiums from their bank account after that time.

Defendants argue that this Court may consider the policy documents because the terms of the insurance policies are central to Plaintiffs' claims. "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). "Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court" without converting a 12(b)(6) motion into a motion for summary judgment, provided that neither party disputes the document's authenticity. *Pryor v. NCAA,* 288 F.3d 548, 560 (3d Cir. 2002) (quoting 27A Fed. Proc., L.Ed. § 62:466 (West 2009)).

In their response to Defendants' motion, Plaintiffs seem to dispute the authenticity of Defendants' documents.[1] They state that they requested copies of the full policies in November 2011, but that Defendants provided only certificates of insurance that summarized the terms of the policies. Plaintiffs attach both certificates to their response: Mrs. Yandrisovitz's certificate describes her policy as a "15 Year Term Life" policy with a monthly premium of $25.66, Ex. 1 to Pls.' Opp., ECF No. 4-2, and Mr. Yandrisovitz's certificate describes his policy as a "15 Year Renewable Term Life" policy with a monthly premium of $96.30, Ex. 2 to Pls.' Opp., ECF No. 4-2. Plaintiffs hint without stating outright that they have never seen the insurance policies which Defendants attach. They state that "at no further time have Defendants ever outlined the ability to increase premiums as Defendants rely on in the attached insurance policy" and assert that "it does not appear a full policy was ever issued to Plaintiffs at the time of issuance or enrollment in the life insurance plan." Pls.' Opp. 1-2.

Plaintiffs present a weak challenge to the documents' authenticity, and may face a difficult challenge at summary judgment. The certificates Plaintiffs attach display the same policy numbers and monthly premiums as the policy documents Defendants attach to their motion; the only notable discrepancy is that the certificates describe the policies as "15 Year." Additionally, the certificates both state explicitly that they do not change or modify the terms of the original policy, but only show that the policy was issued.

Although the Third Circuit Court of Appeals has not explicitly addressed the degree to which an attachment's authenticity must be in dispute before a court should not consider it, courts seem to adopt a lenient standard. A court in this district stated in *Stanford v. Foamex L.P.*

---

[1] Plaintiffs' opposition brief, consisting of three pages of argument without a single case citation, leaves much to be desired in terms of both clarity and legal support. This Court advises Plaintiffs to present more thorough arguments moving forward.

5
083118

that a plaintiff need not provide a specific reason for challenging an attachment's authenticity when opposing a motion to dismiss—as long as a plaintiff raises the issue, he is entitled to validate the authenticity of the documents. No. CIV.A. 07-4225, 2008 WL 3874823, at *4 (E.D. Pa. Aug. 20, 2008) (declining to consider attachments where the plaintiff argued he was unaware of the documents at issue until the defendant attached them to its motion) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). Other courts have entertained similar general objections to authenticity. *See Russo v. Navient Sols., LLC*, No. 2:16-CV-00316, 2018 WL 1474354, at *5 (D. Vt. Mar. 23, 2018) (accepting plaintiff's objection that questions existed about attachments' authenticity "at face value"); *Sigai v. Sedgwick Claims Mgmt. Servs.*, Inc., No. 11-1130-CM-KGG, 2011 WL 6151410, at *1 (D. Kan. Dec. 12, 2011) (declining to consider attachment to motion to dismiss even though the court was "skeptical of plaintiff's objection," which did not allege the document was false, altered, or counterfeit); *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 415, 416 n.4 (S.D.N.Y. 2010) (refusing to consider attached documents even though the plaintiffs referenced these documents in their complaint and their authenticity objections appeared "less than genuine" and "of questionable validity").[2]

---

[2] The Court considers Plaintiffs' authenticity objection with some hesitation. The Third Circuit has encouraged considering undisputedly authentic documents attached to motions to dismiss to prevent plaintiffs from "pleading around" unfavorable documents:

> We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). A lenient approach to authenticity objections risks opening the sort of tactical path to plaintiffs that the Third Circuit Court of Appeals sought to close off by considering attachments in the first place: a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied and then raising a

Plaintiffs allege that they never received the policy documents Defendants attach. This Court accepts their allegation at face value and declines to consider the policy documents at this time.[3] *See also U.S. Renal Care, Inc. v. Wellspan Health*, No. 1:14-CV-2257, 2015 WL 5286638, at *8 n.2 (M.D. Pa. Sept. 10, 2015) (declining to consider letter attached to motion to dismiss where it was unclear whether plaintiff had received it).

**B. Plaintiffs have stated a claim for conversion under Pennsylvania law.**

Under Pennsylvania law,[4] conversion is the "deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995) (quoting *Cenna v. United States*, 402 F.2d 168, 170 (3d Cir. 1968)). Money may be the subject of conversion. *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, No. CIV.A. 09-2751, 2011 WL 6088611, at *5 (E.D. Pa. Dec. 7, 2011) (citing *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. Ct. 2003); *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n.3 (Pa. Super. Ct. 2000)).

---

pro forma authenticity objection when the defendant produced the document. Regardless, absent clear guidance and mindful of "the Third Circuit's reluctance to convert motions to dismiss into motions for summary judgment," *In re Shop–Vac Mktg. & Sales Practices Litig.*, Civ. No. 12–md–2380, 2014 WL 3557189, *3 (M.D. Pa. July 17, 2014), this Court will not consider Defendants' attachments.

[3] This Court has the option to convert Defendants' motion to dismiss into a motion for summary judgment and consider matters outside the pleadings, as long as all parties receive a reasonable opportunity to present all material pertinent to a Rule 56 motion. *See* Fed. R. Civ. P. 12(d). However, the Court will not do so because the parties have not conducted any significant discovery.

[4] A federal court sitting in diversity applies the substantive law of the forum state, which is Pennsylvania law in this case. *See, e.g.*, *Erie R.R. v. Tomkins*, 304 U.S. 64 (1938); *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).

Plaintiffs allege that Defendants have deprived them of funds by removing them from their bank account. They allege that they did not give Defendants permission to remove the money, that Defendants removed the money after the policy term had expired, and that the policy did not entitle them to do so. Defendants respond that they had Plaintiffs' consent and legal justification for deducting the premiums because the terms of the policies permitted them to increase premiums and the Plaintiffs had given them permission to withdraw premiums from their bank account during the terms of the policies. But this argument rests on the policy documents which this Court is not considering at this stage. Based on the facts alleged in the Complaint, Plaintiffs have stated a claim for conversion under Pennsylvania law, and Defendants' motion to dismiss is denied with respect to Count I.

### C. Pennsylvania law does not recognize a cause of action for "misappropriation of funds."

Count III of Plaintiffs' Complaint states a claim for "misappropriation of Plaintiffs' funds." Plaintiffs base this claim on their allegations that Defendants took the funds out of Plaintiffs' bank account without their consent and without authority to do so; thus their misappropriation claim duplicates their conversion claim. *See Brinich v. Jencka*, 757 A.2d 388, 403 n.23 (Pa. Super. Ct. 2000) (recognizing that misappropriation of funds counterclaim was identical to conversion claim). More importantly, Pennsylvania law does not recognize a cause of action for misappropriation of funds. *See Story v. Citizens Bank*, No. CV 17-29, 2017 WL 3173034, at *4 (W.D. Pa. June 28, 2017), *report and recommendation adopted*, No. CV 17-29, 2017 WL 3158029 (W.D. Pa. July 25, 2017) (citing *Wen v. Willis*, 117 F. Supp. 3d 673, 683 n.3 (E.D. Pa. 2015) and *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 766 (M.D. Pa. 2008)). Therefore, Defendants' motion to dismiss is granted with respect to Plaintiffs' misappropriation

claim in Count III. Because no cause of action exists, amendment would be futile, and Count III is dismissed with prejudice. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

    **D. Plaintiffs have not stated a bad faith claim because they do not allege that they made a claim for benefits under their policy.**

Pennsylvania provides a statutory remedy against insurers for bad faith, codified in 42 Pa. C.S. § 8371. Section § 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371. Although the statute does not define "bad faith," the Pennsylvania Superior Court has defined it as "any frivolous or unfounded refusal to pay proceeds of a policy." *Terletsky v. Prudential Property and Cas. Ins. Co.*, 649 A.2d 680, 688 (1994) (quoting Black's Law Dictionary 139 (6th ed.1990)) (quotations omitted). To state a claim of bad faith, a plaintiff must allege that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim. *W.V. Realty, Inc. V. Northern Ins. Co.*, 334 F.3d 306, 312 (3d Cir. 2003). "Although the insurer's conduct need not be fraudulent, 'mere negligence or bad judgment is not bad faith.'" *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004)). "The insured must ultimately

9
083118

show that 'the insurer breached its duty of good faith through some motive of self-interest or ill will.'" *Id.*

Defendants argue that Plaintiffs' claims do not arise from an insurer's failure to pay a claim pursuant to the terms of an insurance policy, and therefore, Plaintiffs have not stated a claim for bad faith. Courts have interpreted "bad faith" to include an insurer's conduct other than an unreasonable denial of benefits. *See, e.g., Davis v. Fid. Nat. Title Ins. Co.*, No. 672 MDA 2014, 2015 WL 7356286, at *15 (Pa. Super. Ct. Mar. 18, 2015) (recognizing that bad faith claim can arise from a delay in making payment); *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999) (holding that an action for bad faith may also extend to the insurer's investigative practices and misconduct during litigation). However, the insured must have made a claim under the policy to state a claim for bad faith. In *Toy v. Metro Life Ins. Co.*, the Pennsylvania Supreme Court evaluated whether the plaintiff insured stated a bad faith claim based on allegations that an insurer resorted to unfair or deceptive practices to convince the insured to purchase a policy. 928 A.2d 186, 199–200 (Pa. 2007). Interpreting the meaning of "bad faith," the court determined that "the term captured those actions an insurer took when called upon to perform its contractual obligations of defense and indemnification or payment of a loss that failed to satisfy the duty of good faith and fair dealing implied in the parties' insurance contract." *Id.* The court concluded that the legislature intended not to give relief under the bad faith statute to an insured who alleges that his insurer solicited the purchase of the policy unfairly. *Id. See also Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 882 (Pa. 2007) ("[Section 8371] applies only in limited circumstances—i.e., where the insured first has filed 'an action arising under an insurance policy' against his insurer."); *Aquila v. Nationwide Mut. Ins. Co.*, No. CIV.A. 07-2696, 2008 WL 4899359, at *6 (E.D. Pa. Nov. 13, 2008) (holding that a plaintiff who did not

10
083118

bring claim under insurance policy could not state a bad faith claim because § 8371 presupposes a claim made of the insurer) (citing *Toy* and *Ash*).

In this case, Plaintiffs did not make a claim on their policies. They do not allege that Defendants failed to comply with their obligations under the policy; instead, they allege that Defendants took more funds than the policy entitled them to.[5] This conduct cannot ground a claim for bad faith under § 8371. Accordingly, Defendants' motion is granted with respect to Plaintiffs' bad faith claim. Although this Court doubts as a matter of fact that Plaintiffs can state a bad faith claim based on the facts alleged, this Court cannot conclude as a matter of law that amendment would be futile or inequitable, and dismissal is without prejudice.

**E. Plaintiffs' fraudulent misrepresentation claim and their claim under the UTPCPL fail because they have not alleged that they justifiably relied on any deceptive act by Defendants.**

Plaintiffs' fraudulent misrepresentation claim[6] and UTPCPL claim[7] both require Plaintiffs to allege justifiable reliance on a misrepresentation made by Defendants. *Johnson v.*

---

[5] Count IV contains formulaic recitations of bad faith actions by Defendant, *e.g.* that they acted in bad faith by "failing to adequately investigate Plaintiffs' claims for coverage and payment." Compl. ¶ 47(f). This Court does not consider these bare legal conclusions, which the facts alleged do not support.

[6] To state a cause of action for fraudulent misrepresentation under Pennsylvania law, a plaintiff must allege: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Johnson v. State Farm Life Ins. Co.*, 695 F. Supp. 2d 201, 209–10 (W.D. Pa. 2010) (citing *Youndt v. First Nat'l Bank of Port Allegany*, 868 A.2d 539, 545 (Pa. Super. Ct. 2005)). Because this cause of action sounds in fraud, Plaintiffs' pleadings must satisfy the "stringent" Rule 9(b) requirements for particularity. *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85–86 (3d Cir. 2015) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). *See also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

*State Farm Life Ins. Co.*, 695 F. Supp. 2d 201, 209–10 (W.D. Pa. 2010) (citing *Youndt v. First Nat'l Bank of Port Allegany*, 868 A.2d 539, 545 (Pa. Super. Ct. 2005)) (recognizing justifiable reliance as element of fraudulent misrepresentation claim); *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008) (recognizing justifiable reliance as an element of a claim under the UTPCPL's catch-all provision). Both claims fail because Plaintiffs have not alleged that they relied on any misrepresentation or deceptive act by Defendants.

Plaintiffs allege that Defendants misrepresented the name of the insurance company and the renewals and premium increases by failing to disclose them. Additionally, as discussed above, they suggest in their opposition brief that they never received the full policy documents and that Defendants provided them certificates of insurance instead. These certificates of insurance describe the plans as "15 Year Term Life" and "15 Year Renewable Term Life." Even making the generous assumption that Plaintiffs have established a deceptive act by Defendants based on their providing Plaintiffs certificates of insurance with the incorrect policy term, Plaintiffs have failed to state a claim under the UTPCPL because they have not alleged that they relied on the certificates of insurance or any other representation by Defendants.[8]

---

[7] The UTPCPL provides a private remedy for various enumerated unfair trade practices. 73 P.S. § 201-2(4)(i)-(xxi). Although Plaintiffs do not specify which provision Defendants allegedly violated, their allegations fall under the statute's "catch-all" provision, which prohibits "any . . . fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). To state a claim under the UTPCPL, the complaint must allege that: (1) Plaintiffs purchased or leased goods or services primarily for a personal, family, or household purpose; (2) Plaintiffs suffered an ascertainable loss of money or property; and (3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL. *See Ries v. Curtis*, No. CIV.A. 13-1400, 2014 WL 5364972, at *19 (E.D. Pa. Oct. 22, 2014), *aff'd*, 664 F. App'x 206 (3d Cir. 2016). When stating a claim under the "catch-all" provision, a plaintiff must also allege that he justifiably relied on the defendant's conduct. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008).

[8] As Defendants point out in their reply brief, Plaintiffs alleged that they received the certificates with the incorrect policy terms instead of the full policy documents for the first time

The Pennsylvania Superior Court in *Toy* held that justifiable reliance requires some action or forbearance by the plaintiff:

> It is the fundamental principal of the law of fraud, regardless of the form of the relief sought, that in order to secure redress, the representee must have relied upon the statement or representation *as an inducement to his action or injurious change of position*. The recipient of a fraudulent transaction can recover against its maker ... if, but only if, (a) he relies on the misrepresentation in acting or refraining from action, and (b) his reliance is justifiable.

*Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 11 (2004), *aff'd*, 928 A.2d 186 (2007) (emphasis added). In *Hunt*, the Third Circuit Court of Appeals found that the plaintiff had not stated a catch-all UTPCPL claim because he did not allege justifiable reliance: although the plaintiff alleged that the defendant tobacco manufacturer made misrepresentations and omissions concerning the price of its products, he did not allege that the defendant's deception induced him to purchase its products or engage in any other detrimental activity. 538 F.3d at 227. *See also Brasch v. Wells Fargo Bank, N.A.*, No. CV 17-3263, 2018 WL 3632094, at *3 (E.D. Pa. July 31, 2018) ("Justifiable reliance requires one to actually rely on the fraudulent conduct."); *Cessna v. REA Energy Coop., Inc.*, 258 F. Supp. 3d 566, 582 (W.D. Pa. 2017) (holding that members of electric cooperative failed to allege justifiable reliance where they did not allege that misrepresentations about disbursements of proceeds caused them to join cooperative or take any other detrimental action), *reconsideration denied*, No. 3:16-CV-42, 2018 WL 816844 (W.D. Pa. Feb. 9, 2018); *cf. Levine v. First American Title Ins. Co.*, 682 F. Supp. 2d 442, 467 (E.D. Pa. 2010) (holding

---

in their opposition brief to the motion to dismiss. A party cannot avoid a motion to dismiss by raising new factual allegations in an opposition brief. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181(3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Cristobal v. Cty. of Middlesex*, No. CV179410MASTJB, 2018 WL 3801250, at *3 n.3 (D.N.J. Aug. 9, 2018) (noting that a court cannot consider allegations raised for the first time in a brief); *Ritter v. Virtue*, No. CIV1:CV-09-1250, 2010 WL 1433130, at *1 (M.D. Pa. Apr. 7, 2010) (same). But as discussed below, even considering these allegations, Plaintiffs have not alleged justifiable reliance as required.

plaintiffs successfully alleged justifiable reliance where plaintiffs stated they would not have paid a higher premium for title insurance if they had known the actual rate).

Although Plaintiffs may have concluded that their policies expired after fifteen years based on the certificates of insurance, they do not allege that they changed their position as a result of this conclusion. They allege that "[i]n justifiable reliance upon Defendants' misrepresentations, Plaintiffs' obligations and liabilities went unpaid resulting in judgments and unpaid debts based on said fraudulent misrepresentations." Compl. ¶ 38. However, they do not specify what obligations and liabilities went unpaid, or allege that they did something they would not have done, or refrained from doing something they would have done, absent Defendants' misrepresentations. Accordingly, Plaintiffs have not alleged justifiable reliance, and their fraudulent misrepresentation and UTPCPL claims are dismissed. Because amendment would not clearly be futile or inequitable, dismissal is without prejudice.

## V. CONCLUSION

For the reasons discussed, Defendants' motion to dismiss is granted in part and all Plaintiffs' claims are dismissed except their claim for conversion in Count I. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge